Good morning. May it please the court. I am Sean Partrick. I'm here with Jennifer Maldonado representing Absolute Collection Service. I guess the first issue we'd like the court to decide relates to the directed verdict, the court's failure to grant the absolutes directed verdict, which is, is there even a cognizable claim under section 1692 E and F of the Fair Debt Collection Practices Act under these facts? Can there be a false representation as to the character, amount, or legal status of the debt in a situation where the debt comes to the debt collector as being admittedly valid? And then later, simply a dispute arises between the validity of the information provided by the creditor and the information provided by a debtor. We also say that there's cases that say that this is not a recognized claim and that it may violate other portions of the statute. I'd briefly like to talk about just a couple facts of this claim that are really important. And that is, when this claim came to ACS, when this debt came to ACS, it was valid, admittedly valid. Ms. Russell has never challenged in this case that the $501 bill that came to ACS was invalid or that she didn't owe it. She also admits in this case she never sent in a written request for verification under 1692 G. She never sent in a written request asking Absolute. Now, we foreclosed that question in a case against Clark versus Absolute Collection Services. We said there's no writing requirement under 1692 G. No, Your Honor. I believe what they said was the letter overshadowed other portions of the statute. There is still a written requirement under 1692 G if the debtor wants to exercise a right that requires the debt collector to go back and re-verify the debt, which is essentially what Ms. Russell wants in this case. The facts of this case continuing on are that after ACS then started instituted legitimate debt collection activities, Ms. Russell then, during that process, pays the bill to the creditor. Does not let ACS know that she had paid the bill. Doesn't copy ACS on the letter to the creditor. Doesn't provide a copy of the check yet. Doesn't provide a copy of the receipt that she paid. So then, she just goes and pays the bill and ACS does not know that. Then, ACS follows up with another call in February the following year. Which is then a false statement. I'm sorry. Because she has paid the debt. It's not, ACS apparently doesn't know it's a false statement, but it is a false statement. Well, we're going to get into that question, Your Honor, about whether the objectively false standard, which I don't believe is correct or under the statute, that's never been addressed in this court. Is it a false statement? Maybe under a 10,000 foot standard. The question is, does it have to be objectively false? Is this statute supposed to be some sort of gotcha statute? Because under this scenario then, when a perfectly reasonable debt, unpaid debt, comes to a debt collector, the debt collector sends the first notice under 1692G, the debtor waits to receive that, and then pays without telling the debt collector, the very next communication, whether it be an oral communication or written communication, saying that the debt is still unsettled, is objectively false. And it doesn't have any involvement with the debt collector at that point. But conversely, if you're correct, and you have to make this written notification to the debt collector, and you pay the debt the very next day, you pay the debt collector according to you, since he hasn't gotten a written notification, can keep sending you dunning letters, can keep making calls, can do this ad infinitum, even though you've paid your debt. Well, no, Your Honor. Yeah, there's no downside. There's no stoppage. And your argument can be pushed that far. That's why it's a problem. I think it goes too far, and that's not what we've argued in this case. I know. You don't have to argue in this case, because those aren't the facts of this case. But that's where your argument goes. Well, Your Honor, I believe that the debtor has other rights that they could certainly exercise. It would always prevent that. They have the right under 1692C to send in a written assistance. They don't want to send anything. They want to be done with it. They got the call. They paid the debt. The end, as far as they're concerned. And you say, no, I'm standing on my rights. Until I get a written response from you, I'm going to keep on sending these letters. You're going to never not pay on time again, because I'm sending a million letters to you. No, Your Honor, that's not what I'm saying. I'm saying we're following the statutory scheme that it allows us to. I'm also saying, Your Honor, that the interpretation in the trial court actually is in conflict with other cases that say that when there is a conflict between the information provided to the debtor, debt collector, by the creditor, and the information provided by the debtor, the debt collector is allowed to reasonably rely on the information provided by the creditor. However, I looked at all the cases that you cited to me, and I couldn't find another one that addresses the situation where the debtor responds to a proper validation notice by paying the debt. Well, Your Honor, I wouldn't say that. Do you have one? I'm happy to write down the site if you have one. Your Honor, I don't know that I have one. The closest thing I have to it that we cited was the Blight v. Revenue Maximization case. And in that instance, there was a district court case, kind of similar to this, it was a health care bill. And I think in that instance, the debtor actually paid the bill at the time of service or close thereto. And the hospital were sending her bills, and she actually provided proof of payment to the hospital, and it was still turned over to a debt collector. And on that instance, the logic of that case was, well, you don't really still have a claim, because when it's an issue about the validity of debt alone, then that's not enough under 1692E to set forth a claim. You should follow the orderly procedure, i.e., you should, if you don't like to. I understand people say, I don't like to, but that's still the procedure to be followed under the statute. Well, the procedure to be followed is, A, the first procedure is you get the bill and you pay the debt, right? Before it even comes to a debt collector, sure. That's the first procedure, right? Sure. After the debt collector comes, he can call. There's an outstanding debt. If you pay the debt, it seems to me, that would be another procedure. Well, that's not a procedure recognized under the statute. I understand that. Oh, it is recognized under the statute. That's what the statute's all about. Well, I would respectfully disagree. The statute is about the communication that's allowed between the debtor and the debt collector. And I agree that that is one way to stop this, is if you pay. But then the other part is. No, according to you, it's not. Well, Your Honor, what I say is. You have to give notice. There's part. I agree, Your Honor. There is a part. You just told me just a second ago one way to stop it all was for her to pay. That's what she did here. She thought she'd stopped it all. To finish, what I would say is to pay and then properly notify ACS. In this case, again, we go to the bona fide error defense that was excluded substantially in this case at trial, which says even if we committed these errors, even the one that the plaintiff complains about, we are allowed a complete defense in this case. To be sure. And if your position with respect to this written notification from the debtor was, in fact, a defense, as you say it is, then it would be in the defense portion of the statute, just as your other defenses. And it's not. Your Honor, the part that we had about the bona fide error defense was that we had another practice or procedure that was in place. I understand that. I'm sorry. Do you understand what I said to you? I may not have understood it. I'm sorry. You maintain that there's this obligation on the debtor to notify you in writing, and without that you can keep on validly making dunning calls, whatever, even though she's paid the debt. And you regard that as this notification that she gives you if a failure to do it is a defense for you. If it really was a defense, it would be in the part of the statute in which the Congress has issued the other defenses, and it's not there. I think I understand, Your Honor, but I don't consider that to be a defense. What I consider it to be is a failure to meet the elements in the liability side, because essentially that's what the statutory scheme is, Your Honor. And, Your Honor, the statutory scheme in case law is oral representations, for instance, and oral dispute, which is what this is. But those are when the debtor hasn't paid the debt. Well, Your Honor, imagine that all the calls, the ACS handles a large number of debts that are placed with it. And can you imagine how many times we get a call from a debtor saying, I've paid, and that statement is false. Under that instance. Well, then fine. They take the risks. If you want to go with a mass procedure, it seems to me you take the risk of having sometimes the debtor is telling you the truth, and you're not paying attention to it. Well, Your Honor, I respectfully disagree that there is a risk-shifting issue here. I think there is a following the statutory scheme. This is what this statute is all about, isn't it? I mean, whether you or I or your client agrees with this statute, Congress thought there was a problem with debt collectors. Agreed. And I don't think this was the problem. I respectfully disagree that this was not the problem they were addressing. That when a debt comes to us validly, and it's paid, and we don't have sufficient information to demonstrate it's paid, that we're allowed to continue our legitimate debt collection activity, I don't believe it was. Are you slipping into your defense now? Well, I'm trying to interpret what I believe is the statutory scheme and what were the wrongs that we're trying to prevent, and this wasn't it. I do believe, Your Honor, that there was an issue here about is it appropriate for the debt collectors, if she just makes an oral representation that I paid. I do believe that's a contradiction. And she pays. Not just an oral representation, but a payment. Well, Your Honor, when we asked for proof of payment, she didn't provide it. There's nothing in the statute that says she has to provide a proof of payment. Well, I would agree with that, Your Honor, but there is parts in the statute that says if she wants to verify the debt, that has to be in writing. If she wants to cease and desist, that has to be in writing. This is not intended to be a gotcha statute where if she does pay or a debtor pays, unbeknownst to the debt collector, and the very next time they send out a letter, it's you violated the statute. That's not the intent of the statute either. Your Honor, if I can move on to our bona fide error defense, please. There were two problems there. One, there was already sufficient evidence before the trial court that there was a practice and procedure in place that was reasonably designed to prevent these kind of errors, regardless of the excluded evidence. And that was Christopher Momfeld testified that ACS would, when a debtor called and said, I have paid, we would ask for proof of payment. And whether the trial court believed that was reasonable, I think the trial court made an improper decision about the quality and quantity of that evidence in not allowing that instruction to go to the jury. Because if you want to argue whether that was reasonable or not, you can do that until you're blue in the face. But it should have gone to the jury, and it didn't. And I think it's also in contravention, Your Honor, with other issues. Again, I believe that there are a substantial amount of cases out there that say that when there's a dispute as to the accuracy of the information provided to you by a creditor versus the debtor, you're allowed to reasonably rely on the debtor. And, Your Honor, that was the other thing I want to point out too is the subjective knowledge. The trial court decided in granting the plaintiff's motion for directed verdict that the statement was objectively false. However, in making that ruling, it decided, well, I'm taking particular interest in the fact that Ms. Russell told ACS over the phone orally, an oral dispute. The problem is then he goes back and says it's objectively. Well, it's either subjective or objective. I didn't, maybe you can help me, direct me to the record. Is there an argument that she didn't tell your client over the phone that she paid the debt? I thought that was conceded. No, Your Honor. The argument is whether that's enough to be a subjective. That fact is conceded. It is, Your Honor. It has never been disputed in this case. What's been disputed is whether that's sufficient. Whether that is because we think the standard is not objective under the statute. It doesn't say objective under the statute. The trial court even took particular time to say, well, it matters what ACS knew. And if that's the case and there is a subjective component, then the trial court is wrong in ruling that this is objectively false. It has to be subjective and, therefore, it has to go to the jury. Now, there was excluded evidence, Your Honor, that was more significant in excluding the evidence of a witness, LARP of ACS, and payment report records that ACS received. ACS, during the first open discovery period, during the 36th deposition, said, we received these updated payment reports. Now, they thought they were from the creditor. It happened to be from a third-party administrator for the creditor. It didn't matter. They disclosed that in the first area of discovery. There were zero follow-up questions asked after that. Then, in a reopened area of discovery, after the trial was continued twice due to no fault of antibodies, the trial court issued an order allowing the plaintiff to reopen discovery for this bona fide area of defense issue. The trial court issued an order that specifically said, this is when the plaintiff has to serve this discovery, and this is when the defendant had to answer it. And the defendant did answer that, identifying Ms. Pavese and these payment report records on time. This may be the first time that evidence may be excluded at trial when the defendant actually complied with the time limits under a trial court order. I'm sorry, Your Honor, my time appears to be up. May I have just a couple more times to finish? Thank you. And so, Your Honor, the issue on the last part, the exclusion of the evidence, it was substantial not just for the federal issue but for the state issue as well. The state statute is not strict liability, as some argue, for the FDCPA. And so, all this issue could have gone straight to the liability issue in the state claims. It was improperly excluded. In the reopened discovery period, the plaintiff deposed Ms. Pavese, the very person they want to exclude as evidence. There's no surprise there. That's what the trial court ruled. There was surprise. And during the deposition of Ms. Pavese, they actually used the records that they wanted to exclude at trial. There's no surprise here. There's no surprise. But more importantly, this is a red herring issue. The issue is not whether the procedure worked or where these payment records come from. It's a look inside the company. Does the company, ACS, have a practice and procedure? It's not whether it worked or not because admittedly it didn't work. But that's not the statute. It's did you have the practice. And it was already before the court that we had this practice on payment procedures. All this other detail, if you want to argue reasonableness, do that. But it was improper to exclude that evidence. It had been disclosed. There was no surprise. Thank you very much. Thank you. Thank you. May it please the court. My name is Deepak Gupta. I represent the plaintiff appellee, Diane Russell. And with me at council table is Suzanne Bagnosh, who was trial counsel in this case. Every appellate court that has confronted the Fair Debt Collection Practices Act has recognized that it's a strict liability regime. It's a carrot and stick approach. As Judge Motz, as you suggested in your questions, it's all about shifting risk. The statute imposes strict liability on debt collectors with the recognition that this is an industry that, unlike other industries, the consumer is not the customer. So the industry does not care about the goodwill of customers in the same way that other industries do. And so there's a risk that debt collectors will overreach and the consequences to consumers can be significant. And so for that reason, Congress imposed strict liability. On the other hand, it recognized that it could be unfair to impose strict liability for every single collection mistake. And so it tempered that strict liability regime with the bona fide error defense. That allows a debt collector to entirely escape liability so long as the error is made in good faith, it's unintentional, and the debt collector is implementing reasonable procedures to discover discoverable errors. And so if the procedures didn't work in a particular case because of a clerical error, the statute doesn't intend to make a federal case out of it. Can I ask you about the language in the statute which says, as your colleague has pointed out, that the debt collector can assume a debt to be invalid if it is not disputed in writing within 30 days? How can a debt collector assume a debt is valid without also making a false statement when the debt is valid? Right. I think the way to read that in a coherent way with the rest of the statute is to say, absent some other information, the debt collector is entitled to kind of, they run the risk that they'll violate the statute, but they're entitled to assume that if you don't make a dispute, they're going to go ahead and engage in collection. It's really about notice to the consumer. The interesting thing about that 1692G provision is that it both contains the notice that's given to the consumer and contains the substantive obligations on the debt collector. But I don't think it's coherent, and no other circuit has read it this way, to read that statute to say there's a 30-day window at the beginning. You have the ability, the right, to dispute in writing, and if you don't exercise that right, the collection can just kind of continue like the animated Buckets and the Sorcerer's Apprentice without any restraints whatsoever. And that particularly makes no sense in a case like this where the consumer actually paid the debt. So Ms. Russell had no reason to make a dispute within that first 30-day window because the debt was valid. And Stone said what she did was she paid the debt, and she didn't receive the subsequent letter from ACS until after that 30-day period had expired. So it would make very little sense to say that the debt collector could just sort of assume the debt is valid forever under those circumstances. And as you suggested in your questioning, it would gut the rest of the statute. You have no reason to have these prohibitions on false statements because the debt collector could make all the false statements they wanted to so long as a consumer didn't undertake to dispute the debt in the first 30 days. In this case, when using the statutory assumption that the debt's valid, when it's paid and ACS is notified, they lose that presumption, don't they? Absolutely, absolutely. Anything that's falsely made from that point on can trigger the statute. That's absolutely right. I mean, I think even if Ms. Russell had not indicated that she had paid, they would still have an obligation to ensure that they had accurate information. She had, in fact, paid. Exactly, exactly. But this is a case where it's easier because she told them she had paid. And they did not at that point say, we require that you provide proof of payment. They said, thank you, we'll make a note of it. They were very friendly and the call ended. And then she receives a subsequent letter that says, you still owe this debt. And not only that, it makes a threat, which is a separate independent violation of the FDCPA, that we will report your debt to the credit bureaus. And that that information will remain on their files for as long as seven years and you may be denied credit for that reason. And so that's an independent violation of the FDCPA. And before sending out that letter, you know, ACS was on inquiry notice that she said she paid. She said that the check had cleared. The very least they could do, and we suggest this would be a reasonable procedure under the bona fide error defense, would be to pick up the phone and call the creditor and say, the consumer says she paid. Is that, in fact, true? That would have taken, that would have been, you know, perhaps a 30-second phone call and it would have been the end of it. Or they could implement a procedure that, you know, other courts have recognized, like require through contract that the creditor provide updates and that they do so on a timely basis and that there's an exchange of information between the creditor and the debt collector. Can I talk to you about the bona fide? Maybe you can talk to us about the bona fide error defense and the district court's rulings. I wasn't clear how their discovery violations caused you prejudice. You can rest assured I have now read everything there is to read about that. Okay, well, I think the best. So I've seen the back and forth and I still couldn't understand. I think the best place to look is perhaps at joint appendix 329, which is the district judge's oral ruling on the motion to eliminate. And he's dealing there with the ability to cure factor under this court's southern states case. And what he says is that, you know, the critical evidence, this late-breaking 11th hour evidence, that there's this corporation called McKesson that processes the payments, that we had not heard about throughout the proceedings, even up to the eve of the first couple of dates for trial, which were continued, we still didn't know that there was this company, that that critical information was in Florida and the ability of the plaintiff to fully investigate that evidence was significantly hampered by the late-breaking evidence. We knew two months before trial, right? At this point, it was a few weeks before trial, I think. I think two months before trial, you knew about McKesson. You knew the name and you knew Pavese. Is that the name of the witness? And I couldn't find another case, and in my own experience, if the other side lets you know something two weeks before trial, two months before trial here, you know, the district judge, even though you feel very aggrieved and even though they violated all kinds of deadlines, in my experience, the district court has said, well, you've got two months, go find out. And I just wondered if you'd found cases where that wasn't the case, except for this one. Well, you know, I'd appreciate the opportunity to send you a 28-day letter on this particular question. Well, it seems to me that this is right in the – this is an issue in the case. No, I agree. I mean, if you had cases, you would have told us about it, right? I agree. I mean, I think, you know, I think what Southern States tells you is that this is an inquiry that's trusted, that the trial judge is trusted to kind of manage the docket and figure – this is a scheduling matter, right, whether or not the trial judge thinks that the trial would be disrupted and whether the plaintiff had the ability to really do the discovery here. But I'd be happy to address that further in a letter. I think, though, it's important to see the trial judges grappling with these factors, these factors in the context of the judge had denied summary judgment on the basis of representations by the defendant that they would base the bona fide error defense on a contractual relationship with the creditor, and that never materialized. And so what I think the judge is saying here in this motion to eliminate ruling, it's a motion to eliminate ruling, but it really goes to the heart of the defense that the defendant raised, which is, look, you told us you'd base this defense on two things. The first was this proof of payment, which all due respect to my opponent, is not even a procedure designed to address the error because it's an after-the-fact procedure. It couldn't possibly have prevented the error. And then the other thing they said was we have a contractual obligation, the creditor has a contractual obligation to provide timely updates, and that never materialized at all. So what the district judge was left with was even after I was reopened to discovery, even if I, in effect, allowed a second bite at the apple, there's still a conflict in the defendant's evidence as to who the client is, what processes were in place, whether there were any contracts. And so as an objective matter, as a matter of law, on the first prong of the bona fide error defense, which is whether the defendant even maintains procedures, setting aside whether those procedures are reasonably adapted to avoid the error, the defendant as a matter of law hasn't even met that burden. And so any discovery violations here are, you know, they're harmless. I mean, even if the district judge hadn't granted this motion to eliminate, in effect what he's saying is you don't have enough evidence as a matter of law to satisfy the bona fide error defense. So if I cannot, I'd like to turn to the bona fide error defense itself, unless you have further questions on the motion to eliminate. The bona fide error defense that was mounted at trial was this proof of payment policy. And what the defendant said was we have a policy that when you tell us you've paid, we require that you provide proof of payment. But in fact, the first letter that was sent to Ms. Russell did not request proof of payment. And even if they had requested proof of payment, that couldn't possibly cure the error, right? Because once you ask for proof of payment and you've made a collection demand to the consumer for debt that's been paid, the error has already occurred. The statute has already been violated. And the focus under the bona fide error defense, and all of the case law bears this out, the focus is on the debt collector. The debt collector has already violated the statute, and the question is what procedures do they maintain to prevent violations from occurring, prevent discoverable violations from occurring? So this is not a procedure that's recognized by any of the circuits as a procedure that satisfies the defense. And, in fact, it's one that's been routinely rejected. We cite in our brief a couple of cases from the Ninth Circuit, the Reichert case and the McCulloch case, as well as a case from the Eleventh Circuit, Owen v. IC System. And all three of those cases reject this kind of reliance on the creditor as a procedure under the FDCPA, simply relying on the creditor passively is not an internal procedure at all. It's essentially shirking responsibility and putting your head in the sand and continuing to collect. In the McCulloch case in the Ninth Circuit, it was very similar. You had a consumer, in response to one of your questions to my colleague, you did have a consumer there in McCulloch who telephoned the debt collector, and the debt collector did not act on that information in its own internal files because it said its policy was basically to rely without verification on the creditor. And the Ninth Circuit had no difficulty in concluding that that procedure didn't qualify for the bona fide error defense. So help me here. What cases have recognized the bona fide defense? Oh, I mean, there are plenty of cases, and Mr. Partrick cites them, where, for example, in Heinz v. Jenkins. You don't have to give me the name. What are the facts? Okay, yeah, sure, sure. The facts are that, you know, the debt collectors maintain a checklist, a set of procedures for checking before a letter goes out, is this debt really owed? Are the amounts that are claimed here really correct? And it could be, you know, we check with the creditor. It could be that we have a contract with the creditor that requires them to make timely updates. And these days, you know, you don't even need to make the phone call. A lot of the time, this data is transmitted electronically, so you could have an electronic transmittal of data from the creditor before the— I thought there was evidence similar to that here. No. Even after the reopened discovery, even if you set aside the motion in Lemonnet ruling and you allow all of the evidence that they would like to present, the best that they have is that the debt collector passively relied on the provision of mailed reports from this company, McKesson, that were supposed to arrive on a weekly basis, but they actually testified that it was not uncommon for there to be a gap in this information. One week or something. That's in Joint Appendix 290. And again, this is just passive reliance on the creditor providing information. There's no evidence ever materialized. Well, when you were describing the cases to me and the checklist, it sounded to me like, in other words, you're saying that the debt collector in all those cases initiated the call to his client. He wasn't passively, your words, relying on the client calling him or notifying him? Okay. You know, I might have overstated because I do think that there are obviously passive procedures that could qualify for the defense. I mean, it would be passive in the sense that the debt collector would have actively had to implement some kind of procedure, but then as that procedure is implemented, they could be receiving information from the creditor. So, for example, if you had a procedure, we will not send out a debt collection letter unless we have received a report from the creditor, and the creditor is required to do that. They're required to tell us within X number of days that a payment is made, and we wait. We wait because we want to ensure that we're not violating the statute. That could qualify. But picking up the phone or making some kind of electronic verification once a consumer has told you you've paid is also not a very onerous procedure, and it's one that we don't... It's not onerous for one person. It's onerous if you have a lot of people in that situation. That's right, but it could be done in batches. It could be done every few days. But what isn't permitted by the statute is just kind of putting your head in the sand and saying, well, they say they paid, but consumers often lie, so we're just going to continue sending out these letters until they send us a canceled check. That's not a procedure. That's what you say happened here and may well be what happened, but what I had gathered, gleaned from this record, was that their procedure was that they had established, not contractually apparently, but that they had an ongoing procedure with their client where their client would be telling them weekly whether the debt was paid, whether the debt was due, whether it was paid, and they relied on that. I think the best way to characterize this is that that is the direction in which they were moving with their defense. That's the way they characterized it to the district court at summary judgment, and I think when you read the motion to eliminate, what comes through is that the district judge essentially felt like he wasn't delivered the goods. He did. He felt like he'd been sandbagged. Exactly, and that's because at the end of the day, no contracts were produced, no written policies were produced, and the best they could come up with is that these written payments were sent by mail, and they should have arrived weekly, but they often didn't arrive weekly, and it wasn't uncommon to have these gaps, and they didn't wait to see whether there was a gap before sending out these collection letters, and the set of reports that were missing in which Ms. Russell's account fell, that wasn't the only one even that month where it went missing. This is why I said that I think the best way to understand what the district judge was saying is under the first step of the procedures requirement, not even getting to whether the procedures were reasonably adapted, but first you've got to make some showing that you actually have procedures and that you actually maintain them, and even after all of the discovery initially and the reopened discovery, that is the best that the defendants were able to produce, and that is with respect not a procedure reasonably adapted to avoid error, and not one that should qualify for the bona fide error defense. There's no case law from any circuit that suggests that something of that kind would qualify. Why shouldn't a jury be required to decide that? I think that what a jury would decide is once you've made a showing that is adequate as a matter of law, that you at least maintain some procedures that could qualify for the bona fide error defense, and that could at least logically qualify for the bona fide error defense. Then you could submit to the jury the question of if there are any facts, disagreements about what those procedures were, and the ultimate question of reasonableness. But I think what the district judge properly concluded here is that they came nowhere near that kind of showing. Well, correct me if I'm wrong. I thought this was sort of in steps. I thought that there was a certain amount of evidence the district court didn't permit them to introduce because he thought that there were some violations, and he was making discovery, dispute resolutions, and so that evidence didn't come in. So then your question is, is there enough evidence that did come in that that evidence was entitled to make a jury question? Is that right? That's correct, yeah. And that evidence was, the evidence that was available was woefully inadequate because it was really just ultimately resulted in kind of passive reliance on intermittent reports. And if that were enough to satisfy the FDCPA, it would gut the FDCPA. There would be no liability ever. Thank you. Thank you. I would like to address a couple of points, please. One is the issue of strict liability under the FDCPA. That ignores that there was a state claim that was also decided by the jury, and the state claim, the state statute, does not have a strict liability standard. And so the exclusion of this evidence would focus on what the bona fide error defense, what that statute allows. What about the exclusion of this evidence that would go to the state claim as to liability? Because it's not a strict liability statute under North Carolina. Strict liability is one thing, but a subjective intent as an element is another thing. And as Judge Floyd pointed out, we may have been before the court recently on the Clark case about an issue. ACS was actually before the Fourth Circuit in another case. The Mavilla versus ACS decided in September of 2013. That was about a case where the health care provider actually assigned a service to a debtor that the debtor never received. But the creditor kept telling ACS, hey, we believe that's theirs. We went back. We verified the debt according to the statute. And in the opinion, the Fourth Circuit said, while there was an error in attributing the debts to Mrs. Mavilla, this was an error that ACS was unaware of. And so apparently knowledge, awareness does have a factor in this statute. I would disagree respectfully with Judge Floyd about whether the assumption is, the statutory assumption is now invalidated simply because the plaintiff calls and tells us she's paid. Maybe that's an issue for the jury about whether the assumption is waived. But I don't think as a matter of law that assumption is now gone. Because, again, the assumption will be gone as soon as someone says they paid, even if they didn't pay. This is really an old dispute of the debt. Again, I'm coming back to the issue that what the plaintiff says is in conflict with what the creditor tells ACS. And there are a line of statutes that says, even if it turns out to be wrong, the debtor is allowed to rely on, reasonably rely on the statements the creditor has said. I go back to another point, as Mr. Chopra says, about the statutory requirements. There are statutory requirements to apply to a debtor, and they can't opt out of them. And if it requires a written notice, then that's what it requires. Counsel also commented about another statute that's at issue here, 1692F, about whether there was a threat to use information that the debt collector knew or should have known was false and threatened to disclose that to a third party. The key phrase is knew or should have known. That also is a subjective element that can't be ignored. And I think the trial court, unfortunately, did ignore it in saying, I'm granting you directed verdict also under 1692F. I disagree with the plaintiff's presumption or statement that it's reasonable to just call after you, for every time someone says that we've paid, to just call the debtor. The record says that we handle hundreds of thousands of debts. It is not reasonable for us to do that. I disagree also with plaintiff's assertion that there was no ability to cure this. Even in the motion in limine, the trial court commented that when discovery was opened the first time, if this bona fide error was such a big deal, why weren't there any follow-up questions in the initial 30B6 deposition? Why didn't the plaintiff go back to Sandhills, the original creditor, and ask for this information? During the second reopened discovery period, why didn't the plaintiff at least try to issue a deposition subpoena to go down to Georgia and let's depose them? I never got even a request to let's go down and work this out. I can't tell you the number of times that I've gone down and out of state, conducted a discovery deposition, turned around in another hour and conducted a four trial deposition. It is possible. It is done. It could have been done here. But there wasn't even an attempt made. So you can't say that I was prejudiced when you never made the attempt in the first place. And by the way, McKesson did comply, gave them the documents. The word McKesson was on those documents that was produced in discovery. McKesson also cooperated with the plaintiff. When the plaintiff wanted an affidavit, McKesson was glad to provide them with an affidavit. What evidence was before the jury after the district court ruled on the motion in limine? It was essentially that the practice of the procedure was if a plaintiff said that they paid a debt, that we would ask them to provide proof of purchase. And Ms. Russell does not deny that that was done. She also admits that she flatly refused to provide any proof of payment. But that's the procedure you're relying on. That was one of the things. I think they excluded evidence also. But yes, that was before the court. Now, you understand the question I'm asking? I do. I do. Okay. So is there anything else that we should know that is the procedure, the evidence on the procedure that was allowed after the deficit? No, Your Honor. That's essentially it. Now, I would like to explain one thing, though, that I think doesn't quite paint the right picture about the procedure. When Ms. Russell was called the first time and she said she paid it, we did have a process of procedure in place with the creditor that they would provide us that information. The testimony from Mr. Momfeld is there were two weekly reports missing. And if the second weekly report was missing, then we would call and that never occurred. The problem is, in this case, it's health care information that's being transmitted. No one can logically think that there wasn't some sort of preplanned agreement between ACS and this creditor to give us this updated payment information. Secondly, to say that we're passively relying on them, I don't think that's true. This is something we had to set up and come to agreement, some HIPAA agreements, with that creditor in order to get this information. So it's not a passive issue. And it is a reasonable – I'm sorry, my time is up. Thank you. It is a procedure that is reasonably designed to correct these errors. And the fact that the first time when we said we're going to wait for the payment information to come in, it didn't, that resulted in the second letter. That doesn't mean it's not reasonable. Looking outside at Sandhills or McKesson and saying you can't use their information, how else are you going to find out if they've paid? How else are you going to have a reasonable procedure? You've got to be able to use outside sources. That can't be the rule here. Thank you for your time. Thank you very much. We will ask our clerk to adjourn court, and then we'll come down and greet the lawyers. This honorable court stands adjourned. I now say the United States dishonorable court.
judges: Diana Gribbon Motz, Albert Diaz, Henry F. Floyd